STATE OF CONNECTICUT *v.* RONALD J. MILUM
(11251)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

---

Argued October 3—decision released November 19, 1985

*William F. Dow III,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Robert J. Devlin,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Ronald J. Milum, was convicted by a jury of the crimes of assault in the second degree; General Statutes § 53a-60; and unlawful restraint in the second degree. General Statutes § 53a-96.[1] On appeal, the defendant claims that

---

[1] The defendant was tried by a jury under an amended substitute information that charged him with assault in the first degree in violation of General Statutes (Rev. to 1979) § 53a-59 (a), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), and unlawful discharge of a firearm in violation of General Statutes § 53-203. The trial jury, however, found him guilty of the lesser included offenses of assault in the second degree in violation of General Statutes (Rev. to 1983) § 53a-60 and unlawful restraint in the second degree in violation of § 53a-96 and not guilty of the unlawful discharge of a firearm in violation of General Statutes § 53-203. After both parties had rested but prior to the submission of the case to the jury, the trial court granted the defendant's motion for judgment of acquittal as to a fourth count which had charged possession of a rifle in a motor vehicle in violation of General Statutes § 53-205.

the trial court erred in: (1) denying the defendant the right to cross-examine the complaining witness to show bias, motive, prejudice and interest arising out of her having instituted a civil action against him for money damages based on the same circumstances as the present crimes and arising out of the fact that she had sought $25,000 in exchange for her recommendation of a suspended sentence for him; (2) refusing to strike the complaining witness' testimony because the police had erased and reused the tape recording of her original statement that allegedly contradicted her trial testimony; (3) refusing to strike the complaining witness' testimony that she suffered emotional trauma as a result of the incident involved in these criminal charges; and (4) denying the defendant's objection to further proceedings which was based on General Statutes (Rev. to 1981) § 54-142a (c).[2] We find error and order a new trial.

---

[2] In this claim, the defendant contends that the trial court erred in denying his objection to any further proceedings in this matter, arguing that under General Statutes (Rev. to 1981) § 54-142a (c) the case had been dismissed as a matter of law because it had been continued for a period of thirteen months without prosecution or other disposition and that an additional period of more than thirteen months had transpired before it was "called" to trial. The trial court's ruling was not erroneous. Section 54-142a (c) then provided in relevant part: "Whenever any charge in a criminal case has been continued in the superior court or the court of common pleas, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be construed to have been nolled as of the date of termination of such thirteen-month period . . . . " The relevant language in the statute is the phrase "since the granting of such continuance." In the present case, no such continuance was sought by either the defense or the state. The defendant's case was also not "dormant" for thirteen months or more. On the contrary, the defendant acknowledges that the case was consistently placed on the trial lists issued in December, 1979, in April, 1980, in July, 1980, and in June, 1981. "The statute appears to be directed not to a situation such as this, but to circumstances in which the state obtains an initial continuance and then completely ignores the case for thirteen months." State v. Troynack, 174 Conn. 89, 95, 384 A.2d 326 (1977). In State v. McCarthy, 179 Conn. 1, 12, 425 A.2d 924 (1979),

The jury could reasonably have found the following facts: The complaining witness met the defendant in 1976 when she was fifteen and the defendant was thirty-three years of age. A relationship developed between them and they lived together at various locations in the New Haven area. At a party given by the defendant on December 22, 1978, he announced his engagement to the complaining witness and he gave her a ring. The engagement was terminated on February 9, 1979. The complaining witness stated that she had broken off the engagement with the defendant on February 9, 1979, but she did not return the ring. The defendant testified that he had terminated the relationship because the complaining witness had become more involved with drugs and alcohol than he could accept.

On Saturday, February 10, 1979, and into the early morning hours of Sunday, February 11, the complaining witness was with a male companion. She admitted using both alcohol and marijuana during that evening with a male companion. When the male companion drove the complaining witness to her mother's home in Hamden at approximately 2:30 a.m., the defendant was sitting in his truck in front of the house. The defendant approached the car and opened the passenger's door. The complaining witness either fell to the ground or the defendant pulled her from the car. The defendant broke the passenger side window of the car and punched the driver who then immediately drove away. The defendant then walked or partly dragged the complaining witness to his truck and drove her to a secluded dirt road in Hamden. During the drive from her mother's house to the dirt road, and while stopped on this road, the victim was cut by a beer bottle wielded

we sustained the trial court's denial of a nolle under the precursor to General Statutes § 54-142a (c), and in doing so we noted that "[a]lso, the defendant's case was on the trial list several times during this thirteen-month period."

by the defendant as she attempted to shield her face with her hands. The principal injuries she sustained were lacerations to her head and mouth, a broken finger in her left hand, and puncture wounds, bruises and abrasions on her body.

The defendant thereafter drove her to his father's house in Hamden, where she fell asleep. When she awoke around 7 a.m., she removed her blood-stained shirt and was given a clean shirt to wear. The defendant's father then drove her to her mother's house, where the police were called. She was taken to St. Raphael's Hospital where she received medical treatment. The defendant was arrested that afternoon. Hamden Detective Gerald Benway took a tape recorded statement from the complaining witness on February 12, 1979.

The defendant first claims that the trial court erred in denying him the right to cross-examine the complaining witness concerning the civil action for damages which she had instituted against him on the basis of the circumstances giving rise to the criminal charges for which he was on trial. This claim of error also includes the denial of cross-examination on his contention that she demanded $25,000 from him in exchange for "her recommendation" of a suspended sentence.[3]

---

[3] At trial, the defendant's attorney argued: "[E]ssentially, the position of the complainant and her attorney, as I understood it, was that they would stand before the Court or recommend to the Court that my client not be incarcerated if he should plead to a second degree assault on the condition that he would never, in any manner, attempt to contact or intimidate or harass the complainant and, additionally, that he would agree to pay the complainant ten thousand dollars within thirty days and fifteen thousand dollars within one year from the date by a performance bond or some other surety for guaranteed payment."

During a long colloquy between the court, the state, and the defendant's attorney, as well as the attorney for the complaining witness, the state acknowledged that it had handed to defense counsel the written note embodying what the defendant's counsel had just represented as his understanding. Defense counsel told the court that, in his view, the written note

He argued in the trial court that he was relying on his sixth amendment right to confrontation and his due process rights under the fifth amendment in his claims concerning the cross-examination into the pending civil action and the complaining witness' demand for $25,000. The defendant has not, however, briefed any due process claim on this appeal and we only address his sixth amendment claim. See *Hayes* v. *Smith,* 194 Conn. 52, 66, 480 A.2d 425 (1984). Contending that he was entitled to cross-examine her on the ground of bias, motive, interest, and state of mind, the state countered that such evidence was irrelevant and collateral and also involved an offer to compromise.[4] In addition, he claims that this was a "complete denial" of cross-examination and not a mere limitation on its extent as the state argues. Maintaining that such evidence was clearly relevant on the grounds claimed,[5] he further

---

was not an offer by the state to him but that the assistant state's attorney "was acting, essentially, as a currier [sic] of a document . . . . " This note apparently had come about as the result of the complaining witness' being asked, according to the statement of her attorney, "whether she would consider allowing the defendant to plead to a lesser offense; namely, assault 2 and she was asked whether some element of restitution could be discussed in connection with that possible reduction of plea . . ." and "we were told that restitution was sometimes discussed and we were asked to make some kind of a proposal, and that is what [defense counsel] is talking about. But at no time did we have any discussion with the defendant or his attorney and we understood ourselves to be acting solely under the State's Attorney—the Assistant State's Attorney's advice and direction." During this colloquy, the state informed the court that, prior to trial, the defendant had rejected the state's offer that "he could plead guilty to a lesser charge under certain circumstances . . . ."

[4] The defendant persisted in his claim even though the state also said that "just based on information and belief . . . there has already been a default judgment rendered against the defendant in that case, so that the question of damages is still an open question, but to some extent that is a closed question, at least at this stage in that case."

[5] The record is not clear that a default had in fact been entered against the defendant in the pending civil action. Whether one had or not would not, however, cause us to dispose of this issue of the denial of cross-examination other than as we have.

argues that prejudice need not be shown because credibility was the critical issue. The state urges that the trial court "properly limited" this attempt to cross-examine into "her attorney's efforts to settle a pending civil litigation" because it was inadmissible as an offer to compromise. In addition, the state claims that the defendant effectively utilized the "ample opportunity" afforded him for impeachment. In any event, the state claims that the trial court's ruling was not erroneous and harmful because even if the desired cross-examination had been allowed, it could not have affected the verdict. We find error.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution 'to confront the witnesses against him . . . .' *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)." *State* v. *Lubesky,* 195 Conn. 475, 481, 488 A.2d 1239 (1985). The primary interest secured by the confrontation clause of the sixth amendment is the right to cross-examination. *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); *State* v. *Randolph,* 190 Conn. 576, 591, 462 A.2d 1011 (1983); *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982). " 'Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.' *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982); see *State* v. *Luzzi,* 147 Conn. 40, 47, 156 A.2d 505 (1959). 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.' Davis* v. *Alaska,* supra, 315–16, quoting 5 Wigmore, Evidence (3d Ed. 1940) § 1395, p. 123. The denial or undue restrictions of the right can at times constitute constitutional error. *Davis* v. *Alaska,* supra, 318; *State* v. *Haskins,* 188 Conn. 432, 454, 450 A.2d 828 (1982)." *State* v. *Ouellette,*

190 Conn. 84, 101, 459 A.2d 1005 (1983). " 'To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).' *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982)." *State* v. *Shindell,* 195 Conn. 128, 140, 486 A.2d 637 (1985); see *State* v. *Ouellette,* supra.

In *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), we quoted with approval from *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980): "The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." (Citations omitted.) We need not address the threshold question in this case, however, because the trial court did not allow any cross-examination into the witness' possible motive and interest. Cross-examination regarding motive, bias, interest and prejudice is a matter of right and may not be unduly restricted. *State* v. *Lubesky,* supra, 482; *State* v. *Shindell,* supra; *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979); *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505 (1959).

The matters sought to be probed by the defendant's proposed cross-examination were clearly relevant. Moreover, it would have made available to the jury significant information to aid in assessing the bias, motive, interest and prejudice of the victim for testifying as she did. See *Skinner* v. *Cardwell,* 564 F.2d 1381, 1389 (9th Cir. 1977), cert. denied, 435 U.S. 1009, 98 S. Ct.

1883, 56 L. Ed. 2d 392 (1978); *United States* v. *Turcotte,* 515 F.2d 145, 151 (2d Cir.), cert. denied sub nom. *Gerry* v. *United States,* 423 U.S. 1032, 96 S. Ct. 564, 46 L. Ed. 2d 406 (1975). In this context, the Eighth Circuit has said that " '[e]vidence tending to show a substantial reason for bias or interest in an important witness is never collateral or irrelevant. It may be . . . the very key to an intelligent appraisal of the testimony of the [witness].' *Barnard* v. *United States,* 342 F.2d 309, 317 (9th Cir. 1965)." *United States* v. *Peltier,* 585 F.2d 314, 332 (8th Cir. 1978), cert. denied, 440 U.S. 945, 99 S. Ct. 1422, 59 L. Ed. 2d 634 (1979); see *Davis* v. *Alaska,* 415 U.S. 308, 316–17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); see also 3A Wigmore, Evidence (Chadbourn Rev. 1970) § 940, pp. 775–76. The Second Circuit has put it this way: "Special treatment is accorded evidence which is probative of a special motive to lie 'for if believed it colors every bit of testimony given by the witness whose motives are bared.' *United States* v. *Blackwood,* 456 F.2d 526, 530 (2d Cir. 1972)." *United States* v. *Harvey,* 547 F.2d 720, 722 (2d Cir. 1976).

"[A]s a general rule cross-examination of the prosecuting witness should be allowed to show the pendency, existence and status of civil action against the accused arising out of the same set of circumstances as those which served as the basis for the criminal prosecution. Anno. 21 A.L.R.2d 1078, 1079 (1952) [superseded by 98 A.L.R.3d 1060] . . . . " *State* v. *Delucia,* 40 Or. App. 711, 596 P.2d 585, 587 (1979); see 81 Am. Jur. 2d, Witnesses §§ 551–553. This is not to say the refusal to admit such evidence has not been held, in the proper circumstances, to be harmless error. See, e.g., 98 A.L.R.3d 1060, 1069, and (Sup. 1985) pp. 61, 62.

Other courts have also found it to be error where evidence of matters akin to the claim in this case was denied admission. In *Villaroman* v. *United States,* 184

F.2d 261 (D.C. Cir. 1950), the appellate court found prejudicial and reversible error where the trial court refused to permit cross-examination of the complaining witness in a criminal prosecution for assault with a dangerous weapon where that witness had a pending suit against the defendant for $50,000 for injuries from the alleged assault. The *Villaroman* court said: "Bias of a witness is always relevant." Id., 262; see *Wynn* v. *United States,* 397 F.2d 621, 623 (D.C. Cir. 1967). The Oklahoma Court of Criminal Appeals has held that it was error to bar defense counsel from cross-examining the complaining witness in an assault and battery case as to whether he had sought damages against the defendant in a lawsuit arising out of the same circumstances as the criminal charges. *Williams* v. *Tulsa,* 623 P.2d 1037 (Okla. Crim. App. 1981). In a criminal case charging burglary, aggravated assault, criminal mischief and battery, the Arkansas Supreme Court held admissible, as bearing on the extent of bias of one victim, evidence that that victim had filed a civil suit against the defendant arising out of the fracas involved in the criminal charges. In so holding, the court said: " 'Pecuniary interest, personal affection or hostility, a quarrel or prejudice may always be shown to discredit a witness.' " *Hawksley* v. *State,* 276 Ark. 504, 510, 637 S.W.2d 573 (1982).

Where the defendant was charged with attempted murder and the trial court excluded evidence that the state's principal witness had instituted a civil suit against the defendant, her former live-in boyfriend, for damages she claimed arose out of the facts of the crime charged, the Supreme Judicial Court of Maine held such exclusion was prejudicial error. *State* v. *Whitman,* 429 A.2d 203, 206 (Me. 1981). In *Whitman,* the court, after observing that the pending suit "could . . . have given [the state's principal witness] a reason to falsify or exaggerate in her testimony at trial," said: "A pending civil suit, or even a contemplated suit, arising out

of the same incident that gave rise to the criminal charges is almost always relevant to the credibility of a prosecuting witness because it gives her a financial interest in the outcome of the criminal prosecution. Such evidence has great probative value because it shows that the state's prosecuting witness 'may have been actuated by personal considerations instead of altruistic interest generated solely from motives in the public interest to bring a criminal to justice.' *State* v. *Doughty,* Me., 399 A.2d 1319, 1324 (1979)." *State* v. *Whitman,* supra, 205. *Whitman* is also instructive on the state's further claim in this case that the defendant, Milum, was provided ample opportunity to impeach and made effective use of that opportunity and that the exclusion of this evidence would not have affected the verdict. In *Whitman,* the state argued that the evidence was properly excluded because testimony from the state's principal witness and the defendant had already produced "ample evidence of the hostility and antagonism between them, so that further evidence would be merely cumulative and time-wasting." Id. In rejecting this argument, the *Whitman* court pointed out that none of the other evidence showed that the state's principal witness "had a specific, independent financial interest in the outcome of the prosecution" and that "[e]ven beyond the personal animosity that would make [her] interests adverse to those of the defendant, her civil damage suit gave her an additional pecuniary motivation for bias against the defendant and hostility to his case." Id. The state, in the case before us, likewise does not point to any such evidence before the jury that would fairly suggest any predicate to show the claimed bias or interest.

The state also claims that the offer of evidence concerning the written note embodying the alleged "agreement" of nonharassment and payment to the state's principal witness of the sum of $25,000 was properly

excluded as an offer of compromise ("her attorney's efforts to settle a pending civil litigation"). An element of this "agreement" was said to be that if the defendant pleaded to second degree assault, the complaining witness would "recommend" that he not be incarcerated. In this jurisdiction, it has been "established as long ago as 1822, in *Hartford Bridge Co.* v. *Granger,* 4 Conn. 142, 148 [1822], that an offer to compromise or settle a disputed claim is not admissible against the offeror." *Evans Products Co.* v. *Clinton Building Supply, Inc.,* 174 Conn. 512, 517, 391 A.2d 157 (1978). Even assuming, arguendo, that the note in question was in the nature of an offer to compromise, "[t]he policy of protecting offers of compromise in civil cases does not extend to efforts to stifle criminal prosecution by 'buying off' the prosecuting witness or victim." McCormick, Evidence (3d Ed. 1984) § 274, p. 813. Significantly, the state in this case informed the trial court that the defendant had rejected before trial its offer to let him "plead guilty to a lesser charge under certain circumstances." This evidence, which the defendant is apparently willing to have placed before the jury for its assessment; see *State* v. *Hatchett,* 560 S.W.2d 627 (Tenn. 1978); clearly goes to the issue of the claimed bias and interest. We are aware that some cases make a distinction in criminal proceedings "between a compromise clearly limited to civil liability for the criminal offense, and one that is directed to the criminal liability therefor." *Carter* v. *State,* 161 Tenn. 698, 702, 34 S.W.2d 208 (1931). Even conceding the validity of this distinction, we believe that the circumstances may properly be developed at the new trial we order so that the finder of fact can determine what is, and was, in the minds of the parties involved at relevant times.

Furthermore, we cannot accept the state's claim that the excluded evidence "would not have affected the verdict." The state asserts that the testimony of the

defendant and that of the victim were "substantially similar" and, therefore, that the inclusion "of the desired cross-examination could not have affected the jury's verdict." A fair view of their testimony does not support the "substantially similar" assertion as it appears that each claimed the other was the "initial aggressor" and the defendant maintained that he acted in self-defense. It also appears from the transcript that the jury had some difficulty in arriving at its verdict, sending in at least four questions to the court upon which instructions were given. A poll of the jury after it was first reported that a verdict had been reached demonstrated that the reported verdict was not unanimous. This poll resulted in the jury being returned for further deliberations. It is also important to point out that the verdict which was finally accepted was one of guilty of the lesser included crimes of assault in the second degree and of unlawful restraint in the second degree and not guilty of the crime of unlawful discharge of firearms. Therefore, the state's claim that the verdict would not have been affected had the proffered cross-examination been allowed is hardly persuasive under the circumstances. The denial of this cross-examination was of constitutional dimension and the prejudice that is apparent from its denial requires that we remand this case for a new trial.

Although our disposition of the issue of the denial of cross-examination is dispositive of this appeal, we will address two other claims of the defendant which may recur at the new trial.

First, the defendant claims that the trial court erred in refusing to strike the testimony of the complaining witness when the state could not turn over to his counsel the tape recorded statement that she had given to the Hamden police. The motion to strike was made after she denied in her trial testimony making certain statements to the police and claimed that the typewrit-

ten transcription of that tape recording might be incorrect in certain respects. This issue swirls around her claim that *she* terminated the relationship with the defendant and his claim that *he* broke up with her.[6] Although the state had given the defense a copy of her statement which she had signed as being the transcription of her tape recorded statement, the defendant argued that he was entitled to the tape recording itself under Practice Book §§ 749 (2) and 755.[7] He argued that this was crucial because her trial testimony concerning who terminated their relationship called into question the accuracy of the written transcription of that tape recording.[8] The state pointed out that that

---

[6] Focally, this issue arose out of the following on cross-examination: "Q. [By Mr. Dow] Is what you're saying that with regard to what you told the police about the termination of the relationship, are you saying that you did not tell the police that Ron terminated the relationship? Do you understand my question?

"A. [The complaining witness] Yes. No, I did not tell them that.

"Q. So, if the police officer has in his report that you said Ron had terminated the relationship, then the police officer is wrong.

"A. Well, when I gave my statement I did it on a tape recorder and it is possible, maybe, that he typed it wrong.

"Q. You did give your statement on a tape recorder?

"A. Yes."

[7] "Sec. 749. [DISCLOSURE OF STATEMENTS] ——DEFINITION OF STATEMENT

"The term 'statement' as used in Sec. 748 means . . .

"(2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

"Sec. 755. —— ——FAILURE TO COMPLY WITH ORDER

"If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

[8] Hamden Detective Gerald Benway testified, in referring to his report, that the complaining witness told him "[t]hat Milum [the defendant] had terminated it [their relationship]."

tape "was reused in the normal course of business of the Hamden Police Department . . . . " The defendant claims that the "destruction" of the tape itself severely prejudiced him in effectively cross-examining her on the alleged prior inconsistent statement. This claimed inconsistency was so closely tied into his claim that damaging her credibility here would weaken her portrait of him as the rejected party who returned that night enraged and used force on her to require her to come back to him. The state contends not only that defense counsel did have the written transcription which was accurate, but also that the tape itself would be merely cumulative because he was able to probe the alleged inconsistency in his cross-examination of Detective Gerald Benway, who took the tape recording and who typed up his report after the tape recording. We find no error in this ruling.

"Since access to the statements of witnesses for the prosecuting authority is not a constitutional right; *United States* v. *Augenblick,* 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157 (Ct. Cl.), cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Pikul,* 150 Conn. 195, 202, 187 A.2d 442 (1962); the burden of showing prejudice rests on the defense. . . . " (Citations omitted.) *State* v. *Myers,* 193 Conn. 457, 469 n.7, 479 A.2d 199 (1984);[9] see *State* v. *Gonzales,* 186 Conn. 426, 436 n.8, 441 A.2d 852 (1982); *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980). The tape recording in this case was no longer in existence at the time of trial

---

[9] The state's brief incorrectly states: "This court recognized in *State* v. *Myers,* 193 Conn. 457, 479 A.2d 199 (1984), that the erasure of tape recorded statements was a standard practice in the New Haven Judicial District at the time of the assault in this case." In *Myers,* we did say that the tape recording of the rape victim's first telephone contact with the New Haven police "could not be produced . . . because it had been erased pursuant to the standard practice of the New Haven police department." *State* v. *Myers,* supra, 466.

but had been "erased and put into service" according to the testimony of the Hamden police officer who also answered "Yes, sir" to the question: "And that is similarly true of any tape recorded statement taken from a complainant, correct?" We repeat, if indeed they need to be repeated, the concerns over such a routine practice that we set forth in *Myers,* another serious felony case. *State* v. *Myers,* supra, 466–68. We agree with the reasoning of the federal courts interpreting the Jencks Act; 18 U.S.C. § 355; after which our Practice Book §§ 748 through 755 are modeled, when they say that "a course of conduct is not necessarily reasonable merely because it is routine. . . ." *United States* v. *Carrasco,* 537 F.2d 372, 376 (9th Cir. 1976); see *State* v. *Myers,* supra, 468, and cases cited therein.

In determining whether the requested sanction of striking the complaining witness' testimony[10] should have been granted, our recent cases are instructive. In *Myers,* we quoted with approval from *State* v. *Shaw,* 185 Conn. 372, 386, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982), where we explained that " ' "[w]hether or not sanctions for non-disclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." ' " *State* v. *Myers,* supra, 467. Initially, we note that while the inability to produce this tape recording, which was made within twenty-four hours of the incident in question, was caused by its nonexistence because of the routine practice referred to, the defendant is not pressing any claim of bad faith against the state or the police. The police in fact caused a typewrit-

---

[10] The state does not argue on appeal that the tape recording does not fall within the definition of a "statement" as defined in Practice Book § 749 (2). See Practice Book §§ 751 through 755.

ten copy of the recording to be made which the complaining witness said she read and signed. There was no such transcript in *Myers*. The testimony of Detective Benway in fact corroborated the defendant's testimony and his theory of who broke off the relationship between him and the complaining witness. There was no such corroborative circumstance in *Myers*. Again, unlike the defendant in *Myers,* this defendant had the opportunity to confront the complaining witness with the detective's testimony to attack her credibility on this very issue. Such testimony, available, and in fact presented, through a completely independent witness, placed before the jury evidence of probative value different from that of the alleged assailant on the one hand and his alleged victim on the other. In the circumstances of this case, we cannot say that there is any prejudicial inaccessibility to disclosable matter that requires us to find that the trial court erred in refusing to strike the testimony.

The defendant also claims that the trial court erred in refusing to strike the complaining witness' testimony that she had experienced emotional trauma as a result of this incident. The defendant was tried before the jury on, inter alia, one count of assault in the first degree with a dangerous weapon under General Statutes § 53a-59 (a) (1). That statute states in part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury . . . . " "Serious physical injury" is defined by General Statutes § 53a-3 (4) as "physical injury *which* creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." (Emphasis added.) "Physical injury," in turn, is defined by General Statutes § 53a-3 (3) as "impairment of physical condition *or* pain . . . ." (Emphasis added.) Pain is

"[m]ental suffering or distress"; 3 Schmidt, Attorneys' Dictionary of Medicine (1985) p. P-4; as opposed to "physical" injury which "relates to the body, as distinguished from the mind." Stedman's Medical Dictionary (5th Lawyers' Ed. 1982) p. 1083. In the context of these statutes, i.e., §§ 53a-59 (a) (1), 53a-3 (3) and (4), the disjunctive "pain" as an alternative type of "physical injury" under § 53a-3 (4) does not, therefore, fall within the meaning of "serious physical injury." Such a construction not only carries out the legislative intent giving meaning to every word in a statute; see, e.g., *State* v. *Burney,* 189 Conn. 321, 327, 455 A.2d 1335 (1983); but also recognizes that " ' "penal statutes . . . are to be strictly construed to protect the fundamental constitutional right to liberty." ' *State* v. *Shockley,* 188 Conn. 697, 714, 453 A.2d 441 (1982) (*Speziale, C. J.,* concurring)." *State* v. *Belton,* 190 Conn. 496, 505, 461 A.2d 973 (1983). We have acknowledged that, where the evidence of physical injury "consisted primarily of testimony relating to emotional trauma precipitated by the [criminal] incident," that evidence "was simply not sufficient to support the jury's implicit conclusion that the physical injury sustained by [the complaining witness] was 'serious' under the statutory definition." *State* v. *Rossier,* 175 Conn. 204, 207–208, 397 A.2d 110 (1978).

As emotional trauma does not satisfy the statutory definition of "serious physical injury," our next inquiry must focus on whether the admission of such evidence, while error, was harmful. The state introduced evidence of the emotional effect of the incident on the victim through her testimony that she was frightened and fearful and had trouble sleeping.[11] We recognize that

---

[11] At the conclusion of the complainant's direct examination, the state offered the following testimony:

"Q. Other than the injuries and the effect of the injuries, specifically the effect related to the use of your left hand, what other effects, if any, did you experience as a result of this incidence [sic]?

incidents of this nature could have an effect on the emotional well-being of a victim. Nevertheless, evidence of emotional trauma is not relevant to the crime of assault in the first degree with which the defendant was charged in this case. There was, however, sufficient evidence of physical injury to submit to and for the trier of fact to determine whether such injury fell within the ambit of assault in the first degree. The testimony by the complaining witness sought to be stricken was in answer to one question at the end of the direct examination. The defendant did not object to this testimony at that time, but rather on the next trial day when he moved that it be struck. The defendant apparently did not consider such testimony to be so obviously prejudicial at the time it was given as to merit an immediate objection. Nor do we find such testimony to rise to such a level of prejudice as to constitute reversible error.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.

"A. I was quite frightened most of the time. I didn't sleep for a very long time. I had nightmares. I also found that I was hand shy. What I mean by hand shy, I was afraid when someone raised their hand. I ducked. I was quite fearful."