STATE OF CONNECTICUT *v.* FERNANDO REIS
(11572)

O'CONNELL, FOTI and LANDAU, Js.

Argued October 26, 1993—decision released February 1, 1994

*John R. Gulash, Jr.,* for the appellant (defendant).

*C. Robert Satti, Jr.,* with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Brian C. Roche,* law student intern, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 1991) § 53a-217 (a).[1] The defendant claims that the trial court improperly (1) precluded him from cross-examining the victim concerning his pending civil action, (2) ruled on the granting of immunity for a potential defense witness, (3) refused to admit a state-

---

[1] The jury found the defendant not guilty of assault in the second degree with a firearm and the lesser included offense of assault in the third degree.

ment against penal interest into evidence, and (4) interpreted the sentencing provision of General Statutes § 53a-217.[2] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On July 20, 1991, the defendant and Steven Carloto were involved in a dispute in Nanny Goat Park in Bridgeport. After a heated oral exchange, the two started wrestling on the ground. During this skirmish, Officer Robert Blanchard of the Bridgeport police department approached them and asked if there was a problem. Both the defendant and Carloto responded that they were only joking around. Blanchard then left, at which point the argument between the two resumed in earnest, culminating with the defendant's shooting Carloto in the foot.

The defendant sought to show that Carloto brought the gun to the scene and, therefore, that the defendant was not guilty of criminal possession of a pistol or revolver. In support of this defense, the defendant claimed that he had taken the gun from Carloto just before Blanchard arrived and that it accidentally discharged when the two resumed wrestling after Blanchard left. Additional relevant facts are included in the analysis of individual issues.

I

The defendant first claims that the trial court improperly precluded him from cross-examining the victim concerning the damages he was seeking from the defendant in a civil action. The civil action arose out

[2] General Statutes (Rev. to 1991) § 53a-217 provides in relevant part: "(a) A person is guilty of criminal possession of a pistol [or] revolver . . . when he possesses a pistol [or] revolver . . . and has been convicted of [certain enumerated felonies]. . . .

"(b) Criminal possession of a pistol [or] revolver . . . is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court."

of the same circumstances that precipitated the criminal charges for which the defendant was on trial. More specifically, the defendant argues that the court violated his constitutional right to confrontation by limiting his cross-examination of Carloto concerning Carloto's bias, pecuniary interest and motive to lie.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him . . . . The primary interest secured by the confrontation clause of the sixth amendment is the right to cross-examination. . . . Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . . The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination. . . .* The denial or undue restrictions of the right can at times constitute constitutional error. . . . To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Milum,* 197 Conn. 602, 608–609, 500 A.2d 555 (1985).

On cross-examination, Carloto testified that he had retained a lawyer to sue the defendant in order to get his bills paid and to be compensated for his pain and suffering. The defendant contends, however, that he was also entitled to expose the extent of Carloto's pecuniary interest by cross-examination concerning the amount of damages Carloto was seeking.

"[A]s a general rule cross-examination of the prosecuting witness should be allowed to show the pendency,

existence and status of civil action . . . arising out of the same set of circumstances as those which served as the basis for the criminal prosecution. . . ." (Citations omitted; internal quotation marks omitted.) Id., 610. In applying the general rule to the present case, we must examine the specific question posed by the defendant. Defense counsel was first allowed to bring out that Carloto had instituted a civil action against the defendant and that in addition to reimbursement for medical expenses he was also seeking damages for pain and suffering. Thereafter, defense counsel asked, "Did you put any dollar amount on this lawsuit that you discussed with your lawyer?" The trial court sustained the state's objection on the ground that "what [the defendant] did with his lawyer is not for the courtroom at this point." The defendant excepted to the ruling but made no effort to pursue the matter through further examination of Carloto or other witnesses or other evidence (e.g., seeking to have the court take judicial notice of Carloto's pending lawsuit). See 1 B. Holden & J. Daly, Connecticut Evidence (1988) § 25.

"Cross-examination [to elicit facts tending to show] motive, bias, interest and prejudice is a matter of right and may not be unduly restricted." *State* v. *Milum,* supra, 609; *State* v. *Lubesky,* 195 Conn. 475, 482, 488 A.2d 1239 (1985). "[R]estrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted crossexamination sufficient to satisfy the sixth amendment." (Citations omitted.) *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980).

Here, the defendant was allowed to show that the victim had contacted a lawyer and had brought suit against the defendant for injuries arising from the same conduct that resulted in the criminal charges. The defendant elicited that the victim hoped that as a result of his civil action he would be reimbursed for his medi-

cal bills and compensated for his pain and suffering. The only evidence excluded by the trial court was a conversation between the victim and his lawyer regarding the dollar amount of the suit. Despite this restriction, the issue of the victim's bias arising from his civil suit against the defendant was adequately covered by other questions allowed by the court. Consequently, our review of the defendant's entire cross-examination reveals that it was sufficient to satisfy the sixth amendment in that the jury was provided an adequate basis from which it could " 'appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Milum*, supra; *State* v. *Roma*, 199 Conn. 110, 116, 505 A.2d. 717 (1986). Moreover, it was well within the trial court's discretion to exclude evidence of the dollar amount of the suit. See *State* v. *Ballas*, 180 Conn. 662, 677, 433 A.2d 989 (1980). Accordingly, the trial court's exclusion in this case was not in abuse of its discretion and did not unconstitutionally restrict the defendant's right of cross-examination.

## II

The defendant's next claim concerns his attempt to obtain immunity from prosecution for Antonio Gomes, whom he wanted to call as a defense witness. In an offer of proof out of the jury's presence, Gomes asserted his fifth amendment privilege against self-incrimination, whereupon the defendant sought a grant of immunity from the state's attorney. The state's attorney refused.

General Statutes § 54-47a[3] empowers a state's attorney to grant immunity from prosecution in order to

---

[3] General Statutes § 54-47a (a) provides in relevant part: "Whenever in the judgment of the chief state's attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving . . . felonious crimes of violence . . . is necessary to the public interest, the chief state's attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness

obtain testimony from a reluctant witness. The defendant argues that although historically the statute has been used only for prosecution witnesses, it should also be used to grant immunity to a defense witness. This is not a new or novel argument and there is no record of its having been successful in this state. The defendant acknowledges that the courts have routinely rejected similar claims. *State* v. *McIver,* 201 Conn. 559, 566–68, 518 A.2d 1368 (1986); *State* v. *McLucas,* 172 Conn. 542, 561, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); *State* v. *Simms,* 170 Conn. 206, 210–11, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 1959 (1976). This court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide. *Caulfield* v. *Amica Mutual Ins. Co.,* 31 Conn. App. 781, 788, 627 A.2d 466, cert. denied, 227 Conn. 913, 632 A.2d 688 (1993).

Following his lack of success at obtaining immunity for Gomes from the state's attorney, the defendant moved that the trial court order the state to grant Gomes immunity or, in the alternative, that the court itself grant the immunity. The court denied both requests. Whether the court ordered the state to grant the immunity or granted it directly to the witness amounts to a direct grant of immunity by the trial court. The short answer to the defendant's claim is that Connecticut case law clearly holds that courts have no authority to grant immunity to a witness. *State* v. *McIver,* supra, 567; *State* v. *McLucas,* supra; *State* v. *Simms,* supra, 211; *State* v. *Watkins,* 14 Conn. App. 67, 73, 540 A.2d 76, cert. denied, 208 Conn. 804, 545 A.2d 1102 (1988).

has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section."

## III

The defendant's third claim implicates the declaration against penal interest exception to the hearsay evidence rule. He argues that the trial court improperly refused to admit into evidence exculpatory statements given to the defendant's investigator by an unavailable witness. That witness, Gomes, was unavailable to testify because he invoked his privilege against self-incrimination. See *State* v. *Mayette,* 204 Conn. 571, 577, 529 A.2d 673 (1989); *State* v. *DeFreitas,* 179 Conn. 431, 452, 426 A.2d 799 (1980). The defendant asserts that the exclusion of that testimony, which directly contradicted Carloto's claim that the defendant brought the gun in question into the park on the evening of July 20, 1990, violated his constitutional rights to compulsory process, a fair trial and due process.

Gomes spoke with the defendant's investigator on two occasions, three months and nine months after the Nanny Goat Park incident. The defendant sought to have the investigator testify that Gomes told him that he had given a .38 caliber gun to Carloto two days before the occurrence in question. The defendant posits that this would support the defendant's testimony that Carloto introduced the gun into the altercation and that in a struggle over its possession it accidentally discharged.

In ruling Gomes' declarations untrustworthy and therefore inadmissible, the trial court found that the statements were given a significant length of time after the occurrence and to a person with whom Gomes did not share a confidential relationship. Moreover, the court found that Gomes' two statements lacked sufficient corroboration.

"A *trustworthy* third party statement exculpatory of the accused and against the penal interest of the

declarant is admissible at the trial of the accused if the declarant is unavailable. . . . The determination of whether such a statement is sufficiently trustworthy to be admitted into evidence at trial lies within the sound discretion of the trial court." (Citations omitted; emphasis in original.) *State* v. *Rosado,* 218 Conn. 239, 243–44, 588 A.2d 1066 (1991).

"Four considerations have been deemed relevant when examining the trustworthiness of declarations against penal interest: (1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness. . . ." (Citations omitted; internal quotation marks omitted.) Id., 244–45. "No single factor in the test for determining trustworthiness is necessarily conclusive . . . the factors are reflective of the fact that there can be no precise formulation of the proof which would constitute sufficient evidence of the trustworthiness of such declarations." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez,* 204 Conn. 377, 392, 528 A.2d 66 (1987).

We agree with the trial court's determination, based on an analysis of the four factors outlined in *Rosado,* that Gomes' declarations against penal interest were untrustworthy and therefore properly excluded from evidence. The state concedes that Gomes' statements were against his penal interest[4] and that Gomes was unavailable as a witness because he had invoked his fifth amendment privilege against self-incrimination. As such, our analysis is limited to the time of the declara-

---

[4] The alleged transfer of the gun to the defendant was unlawful because Gomes admitted that his own possession thereof violated General Statutes § 29-35 (a).

tions and the parties to whom they were made, and the evidence corroborating the statements.

Under the first factor, the trial court found that Gomes' statements were given a significant length of time after the occurrence in question. While this delay alone does not taint the trustworthiness of Gomes' statement, the trial court properly viewed it as weighing against the reliability of his statement. *State* v. *Mayette,* supra, 578. Moreover, Gomes' statements were not made spontaneously, but rather in response to direct questioning by the defendant's investigator. Similarly, Gomes' statements were not made to a person with whom he shared a close, confidential relationship, an important factor in a trial court's assessment of trustworthiness. See *State* v. *Payne,* 219 Conn. 93, 115, 591 A.2d 1246 (1991); *State* v. *Hernandez,* supra, 392.

In assessing the second factor, the trial court correctly noted that since third party statements exculpating an accused are inherently suspect, any evidence corroborating the statements must clearly indicate the trustworthiness of the proffered statement. See *State* v. *Rosado,* supra, 249; *State* v. *DeFreitas,* supra, 450–51. In this case, the trial court explicitly found that while Gomes' statements might corroborate the fact that Carloto allegedly possessed a gun when he entered the park, there was no evidence corroborating Gomes' declaration that he gave the gun to Carloto.

We conclude that the trial court did not abuse its discretion in finding Gomes' declaration untrustworthy and subsequently excluding those statements from evidence at trial.

## IV

In his final claim, the defendant contends that the trial court incorrectly determined that under the pen-

alty provision of General Statutes § 53a-217 (b) it lacked discretion to impose a sentence other than incarceration. General Statutes (Rev. to 1991) § 53a-217 (b) provides: "Criminal possession of a pistol, revolver or electronic defense weapon is a class D felony, *for which two years of the sentence imposed may not be suspended or reduced by the court.*" (Emphasis added.) The defendant was sentenced to a term of five years, execution suspended after two years of incarceration, with a three year period of probation.

The legislature has the authority to impose a mandatory minimum sentence for a specific crime. *State* v. *Darden,* 171 Conn. 677, 680, 372 A.2d 99 (1976). A trial court's power to impose a particular sentence is defined by statute, and the constitution does not require that the judiciary be given discretion in sentencing. *State* v. *Lopez,* 197 Conn. 337, 353, 497 A.2d 390 (1985).

The defendant argues that the two year nonsuspendable minimum sentence is mandated only if the court first determines that a term of incarceration is an appropriate sentence. The defendant contends that General Statutes § 53a-217 (b) does not prohibit the court from imposing a fine or a conditional discharge. In this case, the trial court's decision to incarcerate the defendant, rather than to impose a fine or conditional discharge, was based on the specific circumstances facing the court at sentencing. In its sentencing remarks, the trial court expressly stated that it was rejecting a fine because it would take money away from the defendant's family.

In addition, the trial court indicated that the defendant's fifteen prior convictions weighed very heavily in its determination of a proper sentence. It compared a person's life to a bank account full of credits with every conviction's being an expenditure of some of those credits. Because of the defendant's numerous convic-

tions, the trial court commented that "he's run out of credits." Moreover, the trial court told the defendant that his conduct typically leads to a jail sentence, and immediately before imposing the sentence remarked that "my feeling in this case is that the length of the incarceration is probably less important than the fact of incarceration."

Even if we agreed with the defendant that § 53a-217 (b) permits a court to exercise its discretion and to impose a sentence other than incarceration, this would avail the defendant nothing because the trial court affirmatively declared, "I think the sentence is appropriate. I am not sentencing him to something that I think is inappropriate." In view of the sentencing comments, we cannot agree with the defendant's argument that the trial court was of the opinion that it was bound by the statute to impose a mandatory period of incarceration.

Because we conclude that the trial court felt that the facts justified a term of incarceration, we do not reach the issue of whether General Statutes § 53a-217 (b) mandated a two year, nonsuspendable sentence. See *State* v. *Carpenter,* 19 Conn. App. 48, 51 n.1, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.