MEMORANDUM OF DECISION ON MOTION TO DISMISS AND/ORMOTION FOR SUMMARY JUDGMENT
This matter involves a lease between the Plaintiff as landlord and the Defendants as occupants of the entire fourth floor of the office complex known as Two Greenwich Plaza, Greenwich, Connecticut. At issue is a ten year lease between Greenwich Plaza, Inc. and Whitman and Ransom which the parties agreed became effective July 1, 1990. CT Page 2419
The law suit is in three counts. The Plaintiff is the owner of the building and the landlord. The Defendants are the law firm of Whitman and Ransom (WR), the law firm of Whitman, Breed, Abbott and Morgan (WBAM) and individual partners of those law firms. The First Count against the two law firms seeks money damages for violations of the lease; specifically the landlord claims that the two law firms breached Article 11.01 of the lease by either assigning or assuming the lease from WR to WBAM without obtaining the landlord's prior written consent. The Second Count against the two law firms seeks money damages for anticipatory breach claiming that the lease contains dependent contract clauses. The Third Count claims money damages against the individual partners of the law firms alleging that the individuals are liable for breach and/or anticipatory breach of the lease. It is alleged that this breach and/or anticipatory breach occurred prior to June 30, 1995 and thus the individual partners are personally liable to the landlord under Article 42.02 of the lease. "Section 42.02. It is expressly understood and agreed that the partners of the Tenant shall be liable for any and all obligations of Tenant resulting from any defaults of Tenant occurring at any time during the first five Lease Years. It is expressly understood and agreed that no partner of the Tenant shall have any personal liability for any obligation of the Tenant resulting from any default of Tenant occurring on or after the commencement of the sixth Lease Year." The sixth Lease Year began July 1, 1995.
The Defendant law firms and the individual defendants excluding J. Joseph Bainton have filed appearances. Certain individual partners have filed Motions to Dismiss claiming improper service. These Motions to Dismiss are not before the court. The two law firms have filed a combined Motion to Dismiss and/or Motion for Summary Judgment addressed to the first two counts of the complaint. That combined motion is the subject of this decision.
The Motion to Dismiss is based on the Defendant's claim that the issues are not ripe; i.e., the matter is not yet justiciable. The Defendants claim that the Plaintiff has not sustained any damages since all rent has been paid on a current basis and the defendants are not in default in their rental or additional rental obligations. CT Page 2420
The alternative remedy sought in the same motion by the Defendants is a Summary Judgment. The Defendants have claimed five reasons why the court should grant a Summary Judgment in favor of the defendants on the First and Second Counts: (1) The landlord consented to the assignment by WR, assumption by WBAM and the actual occupancy of the premises by WBAM, (2) There was an oral modification of the lease, (3) The Plaintiff is prevented from maintaining this lawsuit under the theories of waiver and/or equitable estoppel, (4) There is no acceleration clause in this lease and no anticipatory breach and (5) The two defendant law firms merged and therefore there was no assignment and/or assumption which violated Article 11.01 of the Lease.
FACTS
Effective July 1, 1990 the plaintiff, Greenwich Plaza, Inc., as Landlord, and the Defendant, Whitman and Ransom, as Tenant, entered into a ten year lease for the entire fourth floor of the office building known as Two Greenwich Plaza, Greenwich, Connecticut consisting of 34,789 square feet. The parties agreed that the effective date of the lease was July 1, 1990. A fixed minimum rent was to be paid which increased annually until the sixth year. The fixed minimum rent then remained at the same amount for Lease Years six through ten. The fixed minimum rent for the year beginning July 1, 1995 was $1,304,587.50 which was at the rate of $37.50 per square feet. In addition the Tenant was to pay to the Landlord "additional rent" based on Landlord's costs and expenses, increases in real estate taxes, electrical services and other costs.
Whitman and Ransom was described in the lease as a New York general partnership and was engaged in the practice of law. Prior to 1990 a number of the general partners of Whitman and Ransom had been engaged in the practice of law in Greenwich, Connecticut in one of the oldest and largest law firms in the state. The premises was to be occupied by the law firm in continuation of its practice of law. A reorganization took place with the law firm of Whitman and Ransom merging with another New York law partnership known as Breed, Abbott and Morgan. The resulting law firm became known as Whitman, Breed, Abbott and Morgan (WBAM). By a letter of November 16, 1993 the Landlord was notified of certain changes pertaining to Whitman and Ransom as follows: "The Connecticut equity partners of Whitman and Ransom were all given the choice of CT Page 2421 whether to become a fully integrated part of the new firm, Whitman, Breed, Abbott and Morgan, or to remain closely affiliated with the new firm under a work sharing agreement (sharing the firm name, professional liability coverage and similar elements). As we explained, the Connecticut equity partners elected to become a separate legal entity under the affiliation arrangement." Exhibit B, June 5, 1995 affidavit of Frank L. Baker, Esq.
Article 11.01 of the lease says: "Tenant will not by operation of law or otherwise assign, modify, mortgage, or encumber this Lease, nor sublet or permit the Demised Premises or any part thereof to be used by others, without Landlord's prior written consent in each instance" On December 6, 1993, Frank L. Baker, equity partner of WR and WBAM and the author of the November 16, 1993 letter, was notified by Peter E. Hewitt, Senior Vice-President and General Counsel of Greenwich Plaza, Inc., that the Landlord would not accept or consent to any assignment to or assumption by the new law firm unless all of the equity partners of the new firm agreed to be liable for all defaults of the new firm under the Lease for the entire terms of the Lease. Article 42.02 of the Lease bound the equity partners to be personally liable for any lease defaults occurring in the first five years of the lease which period ended June 30, 1995.
No written consent to the assignment or assumption was obtained from the Plaintiff. WBAM continued to occupy the premises continuously from November 1993 and occupied the premises as of the date of the oral decision of this Motion issued from the bench on July 27, 1995. All rent and additional rent pursuant to the Lease after December 1993 was billed by the Landlord to WBAM. All such rent was paid by WBAM and accepted without protest by the Landlord. The Landlord billed WBAM for extra costs after December 1993, changed the lobby and elevator signs to WBAM and renewed the parking agreement with WBAM. Other facts found by the court to be relevant to the Motion for Summary Judgment will be stated later in this opinion.
MOTION TO DISMISS
Although the moving papers are contained in one motion, the parties and court considered that two separate motions were filed. The first was the Motion to Dismiss. The second CT Page 2422 was a Motion for Summary Judgment, to be considered if the Motion to Dismiss was not granted. The Motion to Dismiss dated June 6, 1995 seeks, "In the alternative, the First count of the Complaint should be dismissed for lack of ripeness."
A Motion to Dismiss alleging lack of subject matter jurisdiction must be considered by the court and acted on, no matter at what stage of the proceedings the issue is raised. It may be considered at the earliest stage of the pleadings in the order permitted by Practice Book § 112. It can be considered after an answer has been filed, after the pleadings have been closed, during the trial, after judgment has been entered or by the Appellate Court or Supreme Court on appeal, either sua sponte or by motion of the parties. Kolenberg v.Board of Education, 206 Conn. 113, 124 (1988).
The Defendants claim that since the rent and additional rent has been paid on a current basis the Plaintiff has sustained no monetary damage. They claim that there is nothing to decide therefore the case in not ripe for a decision and the court lacks subject matter jurisdiction since the claim is not justiciable.
This court concludes that under Connecticut law, the Superior Court is deprived of subject matter jurisdiction if the claim is not "ripe" and the law suit is thus not "justiciable." Sadloski v. Manchester, 228 Conn. 79, 83
(1993).
The purpose of a Motion to Dismiss is to test the Court's authority to hear the case before it. Justiciability can be addressed by a Motion to Dismiss. Pellegrino v. O'Neill193 Conn. 670, 673 (1984).
 "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute: `Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law.' Harkins v. Driscoll, 165 Conn. 407, 409, 334 A.2d 901 (1973) . . . (2) that the interests of CT Page 2423 the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. (Citations omitted.) State v. Nardini, 187 Conn. 109, 111-12, 445 A.2d 304 (1982). `In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal.'" Hallas v. Windsor, 212 Conn. 338, 347 (1989).
In ruling on a Motion to Dismiss a Court should indulge every presumption favoring jurisdiction. Connecticut Light and PowerCo. v. Costle, 179 Conn. 415, 421 (1980). "In ruling upon a motion to dismiss, the court should construe the allegations of the complaint in their most favorable light." Golden HillPaugusett Tribe v. Weicker, 1992 Ct. Sup. 4094, May 5, 1992 (Burns, J.); Reynolds v. Soffer, 183 Conn. 67, 68 (1981). The motion may be granted only if it is clear on the record that the Court is without jurisdiction. No matters outside the record may be considered. Standard Tallow Corporation v.Jowdy, 190 Conn. 48, 54 (1983). The determination of subject matter jurisdiction in a Motion to Dismiss does not extend to the merits of the case. Southport Manor Convalescent Center,Inc. v. Foley, 216 Conn. 11, 16 (1990).
Although the defendants claim that the court has no subject matter jurisdiction due to lack of ripeness, that is another way of stating that the plaintiff has sustained no loss thus it has no standing to sue. "Standing focuses on whether that party is the proper party to request adjudication of the issues. . . . The emphasis is on whether the party has a personal stake in the outcome of the controversy, . . . and whether the dispute touches upon the legal relations of the parties having adverse legal interests." (Internal quotations and citations omitted) Shaskan v. Waltham IndustriesCorporation, 168 Conn. 43, 49 (1975) "The plaintiff must allege and demonstrate that the allegedly improper . . . conduct causes him to suffer some pecuniary or other great injury." Alarm Applications Co. v. Simsbury Volunteer FireCo., 179 Conn. 541, 549 (1980). This is the issue which the defendants have raised in this Motion to Dismiss. The record CT Page 2424 indicates that the rental payments have been made. The plaintiff has not sustained any pecuniary loss of rent at this time. It is possible though that there is some other pecuniary loss in the form of attorneys fees and other damages that the plaintiff may have sustained by reason of the alleged default.
This litigation involves a ten year lease of 34,789 square feet on the top floor of a most magnificent office building, arguably the best location for offices in the Town of Greenwich. Effective July 1, 1995 the fixed rent is $1,304,587.50 per year. Multiplied by the five years from July 1, 1995 to the end of the lease, the plaintiff's damage claim for fixed rent is $6,522,937.50. There are lease provisions for the tenants to pay additional rent, utility payments, charges prorated operating costs, interest, and attorneys fees. The plaintiff thus claims that its damages can exceed 7 million dollars. The defendants are claiming that no such damages have occurred because there was no breach, and even if there was a breach, no damages have been incurred by the plaintiff because the fixed rent, and additional rent and the other costs have been paid.
 "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Sadloski v. Manchester, supra 83-84.
Each view has been fairly and vigorously represented in this case. This matter is in hot controversy and will remain in hot controversy for a substantial period of time, although there may not be money damages for lost rent due at this particular time. This court may decide a case only when it CT Page 2425 presents a live controversy which can be resolved by relief that is within the court's power to grant. Reynolds v. Vroom,130 Conn. 512, 515, (1944) Schroeter v. Salvati, 6 Conn. App. 622,623 (1986).
As to the damage issue if the plaintiff proves a breach at the very least it would be entitled to nominal damages.Baldwin v. Harmony Builders, Inc., 31 Conn. App. 242, 244
(1993). Nominal damages for the plaintiff are sufficient for the Court to have standing; to have a justiciable interest.Ratner v. Willametz, 9 Conn. App. 565, 579 (1987); Creem v.Cicero 12 Conn. App. 607, 611 (1987); Childs v. Bainer,35 Conn. App. 301, 305 (1994) "Some damage results from the mere invasion of the plaintiff's property rights, and its amount, not being determinable by proof, must be comparatively small and in that sense nominal." Stiefel v. Lindemann, 33 Conn. App. 799,814 (1994) This court has the power to order money damages for breach of leases. Connecticut General Statutes§ 47a-68(h) These parties are landlord and occupant of commercial premises, a status well within the Court's statutory jurisdiction. Therefore, the Plaintiff has alleged a justiciable controversy.
This court finds, based on the record and pleadings that the plaintiff has standing. Whether or not there are actual damages is not relevant. At this time that fact does not deprive the court of subject matter jurisdiction.
The Motion to Dismiss is denied.
MOTION FOR SUMMARY JUDGMENT
A Motion for Summary Judgment may be brought at any time, even though the pleadings are not closed. Practice Book § 379
The motion is properly and timely filed. Both counsel have had adequate time for preparation of the supporting material, memoranda and affidavits.
The standards for granting a Motion for Summary Judgment are contained in Practice Book § 384. "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This Court has reviewed the pleadings, the lease, the supporting documents attached to the CT Page 2426 lease, multiple letters, copies of checks and other receipts, an affidavit of Frank L. Baker, two affidavits from Peter R. Hewitt along with substantial supporting documents in those affidavits, briefs and the motion filed by the defendants.
Summary Judgment shall be rendered forthwith when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.Gambardella v. Kaoud, 38 Conn. App. 355, 358 (1995).
 "The party moving for summary judgment, has the burden of showing the absence of any genuine issues as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts or substantial evidence outside the pleadings to show the absence of any material dispute." (internal quotations and citations omitted) Gambardella v. Kaoud, supra 358.
"A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." Hammer v. Lumberman's Mutual Casualty Company,214 Conn. 573, 578 (1990). "The test is whether a party would be entitled to a directed verdict on the same facts. The party seeking summary judgment has the burden of showing the nonexistence of any material fact." Connecticut Bank andTrust Co. v. Carriage Lane Associates, 219 Conn. 772, 781
(1991). Denials of the allegations in the complaint are an insufficient basis for the rendition of summary judgment.Plouffe v. New York. New Haven Hartford Railroad Co.,160 Conn. 482, 488-489 (1971). "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Hammer v.Lumberman's Mutual Casualty Co., supra 579 "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." CT Page 2427Connecticut Bank and Trust v. Carriage Lane Associates, supra 781.
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Scinto v. Stamm, 224 Conn. 524, 530 (1993). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact, and, therefore, cannot refute evidence properly presented to the court in support of a motion for summary judgment." (internal quotation marks omitted) Water and Way Properties v. Colt's Manufacturing Co.,230 Conn. 660, 665 (1994). "Demonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 244 (1995);United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378-379 (1969). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500 (1988). "In evaluating the propriety of a summary judgment, we are confined to an examination of the pleadings and affidavits of the parties to determine whether (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to a judgment as a matter of law." Miller v. UnitedTechnology Corporation, 233 Conn. 732, 745 (1995). With those general standards in mind the Court will address the issues raised by the Motion for Summary Judgment.
There are a number of reasons advanced by the defendants in support of their motion for summary judgment. They first claim that they are entitled to summary judgment because as to the First Count there was consent to the assignment to and/or assumption by the new entity, WBAM. The Defendants state that the format and manner of the written consent was not specified in the lease and the consents are contained in the various items of correspondence in Frank L. Baker's supporting affidavit. Secondly the defendants claim that there was an oral modification of the lease. McKenna v. Woods, 21 Conn. App. 528,533 (1990). The defendants know the lease contains a non-waiver clause that does not permit oral modification of CT Page 2428 the lease. They claim that the non waiver clause itself is not an essential term of the lease and can be waived. Further the defendants claim that the oral modification satisfies the statute of frauds on the remaining five years of the lease due to part performance. Thirdly, the defendants are claiming waiver and/or equitable estoppel by reason of various actions or acts of the parties documented throughout the affidavits of Mr. Hewitt and Mr. Baker along with their supporting documents. Fourthly the defendants point out that there was no acceleration clause in the lease. Language that was close to an acceleration clause was deleted specifically in Article 17.03. Therefore, the Plaintiff is not entitled to seek money damages by reason of an accelerated debt. As a Fifth reason the defendants argue the law of the State of Connecticut does not permit anticipatory breach and/or repudiation of a commercial lease; commercial lease clauses being independent covenants. Therefore, the Plaintiff has failed to allege sufficient facts as a matter of law to meet the current commercial breach legal requirements. Finally there is a claim by the defendant that under the case of Aiello v.Austrian, 2 Conn. App. 465 (1984) the entity of Whitman and Ransom and the entity of Whitman, Breed, Abbott and Morgan are no different than the merger of the corporations in Aiello v.Austrian. Therefore there has been no assignment and no assumption. There is no violation of the terms and conditions of the assignment/assumption clause of the lease.
The Plaintiff makes three arguments. First, whatever efforts that were made by the Plaintiff in accepting rent and/or billing from the WBAM were in fulfillment of its duty to mitigate damages. Rokalor Inc. v. Connecticut EatingEnterprises, Inc., 18 Conn. App. 384, 388 (1989). Second, the plaintiff has invited this court to follow, what the Plaintiff has laid out in its Memorandum of Law, a trend away from common law standards of commercial lease interpretation, towards the direction of interpreting a lease as a straight contract. Using straight contract interpretation rules lease clauses, claims the plaintiff, should be dependent covenants. The plaintiff further claims that the issues raised by the defendant are disputed and thus there are genuine issues as to material facts requiring the denial of the Motion for Summary Judgment.
The first issue to be discussed is the claimed lease violation of Article 11.01, the assignment section. "Tenant CT Page 2429 will not by operation of law or otherwise assign, mortgage or encumber this lease, nor sublet or permit the Demised Premises or any part thereof to be used by others, without Landlord's prior written consent in each instance. The consent by Landlord to any assignment or subletting shall not in any manner be construed to relieve Tenant from obtaining Landlord's express written consent to any other or further assignment or subletting." The record clearly indicates there was no one written consent document signed by the plaintiff consenting to the taking over of the premises by Whitman, Breed, Abbott and Morgan. There is a genuine issue of material fact as to whether the documents contained in the affidavits taken together could be construed as written consent by the plaintiff to assignment and/or assumption.
Section 11.01 is a covenant against assignment. Covenants against assignments and assumptions under Connecticut law are strictly construed against the Landlord as a restraint against alienation. Aiello v. Austrian, supra 467. Cases have held that an unreasonable withholding of consent to an assignment of a lease of commercial premises is a breach of the covenant of good faith and fair dealing. The good faith and fair dealing obligations between a commercial landlord and tenant are mutual. Warner v. Konover, 210 Conn. 150,155 (1989).
Warner v. Konover changed the law concerning the landlord's obligations to provide reasonable consent to lease assignments and assumptions. The former rule is demonstrated in Robinson v. Weitz, 171 Conn. 545, 549 (1976). "When a lease requires a landlord's prior written consent as a condition to its assignment, a landlord could refuse to consent to an assignment and the reasons for its actions would be immaterial. "Warner v. Konover, supra 153; Robinson v.Weitz, supra 549. That rule has been changed by the mutual good faith and fair dealing obligations under Warner v.Konover. "Robinson, supra, has been modified in a case involving a commercial lease, now requiring that when a landlord contractually retains the discretion to withhold consent to an assignment of a tenant's lease, he must exercise that discretion in a manner consistent with good faith and fair dealing. Warner v. Konover, 210 Conn. 150, 155." Lunnv. Tokeneke Association, Inc., 1992 Conn. Sup. 1946, March 3, 1992. CT Page 2430
An earlier case demonstrating reasonableness in the actions of a landlord or tenant is in Central New HavenDevelopment Corporation v. La Crepe, Inc., 177 Conn. 212
(1979). In La Crepe there was a three year delay by the tenant in exercising its right to cancel the lease after the landlord did not provide a mortgage non disturbance agreement three years earlier. In a suit by the landlord for money damages against the tenant for breach of the commercial lease the court found that the tenant's option to cancel the lease contained no special time within which the tenant must exercise its option to cancel. The court held under those circumstances the option must be exercised at the time the contingency occurs or within a reasonable time thereafter. The court found an unreasonable delay by the tenant in exercising its option to cancel the lease. The lease contained a non-waiver clause which the court said could be also waived under these facts. The court found for the landlord on the theory that the tenant had waived its option to cancel the lease.
The consent clause can be waived. The nonwaiver clause can be waived. The case of Latimer Point Mng. Corporation v.Anderson, 1 Conn. App. 310, 311-312 (1984) indicates the following prior written consents can be waived by the actions of the parties: written approval of the assignment of the lease, waiver of right of first refusal to purchase the premises and written consent prior to the construction of any additions to the premises. A clause that states that there can be no waiver unless it is in writing, can itself be waived. O'Loughlin v. Poli, 82 Conn. 427, 432 (1909).
Oral modifications of a lease over one year can be subject to the statute of frauds. Connecticut GeneralStatutes § 52-550. Notwithstanding a statute of frauds problem, the concept of waiver and estoppel still can be applied. There is nothing in the statute of frauds to prevent the application of waiver and estoppel. S.H.V.C., Inc. v.Roy, 37 Conn. Sup. 579, 583 (1981). The statute of frauds itself does not require a written modification of nonessential clauses such as a non waiver clause. Lynch v. Davis,181 Conn. 434, 441 (1980). Calamari Perillo, Contracts, p. 715 (2nd Ed. 1977).
This Court finds, and finds as a matter of law, that the non waiver clause, the written waiver of breach clause in CT Page 2431 Article 32.01 and the written consent to assignment clause in Article 11.01 in this commercial lease can be waived. This court further finds that the two Articles, § 32.01 and § 11.01, as a matter of law, are not essential clauses to the lease therefore, are not subject to the statute of frauds. Those clauses can be waived by conduct and need no written document to effect a waiver.
"This Court has determined that implied waivers and estoppel by conduct are so similar that they are nearly indistinguishable." S.H.V.C., Inc. v. Roy, 188 Conn. 503, 510
(1982). Waiver, implied waiver, estoppel and equitable estoppel are also commonly interchangeable terms. Novella v.Hartford Accident Indemnity Company, 163 Conn. 552, 564
(1972). "While waivers and estoppels are theoretically very different things, and the distinction between them is one easy to preserve when express waivers are under consideration, it is nevertheless true that the dividing line between waivers implied from conduct and estoppels oftentimes becomes so shadowy that . . . the two terms have come to be quite commonly used interchangeably. When the term waiver is so used, however, the elements of an estoppel almost invariably appear, and it is quite apparent that it is employed to designate, not a pure waiver but one which has come into an existence of effectiveness through the application of the principles underlying estoppel. . . . The apparent difference between certain of the cases becomes one of terms rather than of fundamental principle." S.H.V.C., Inc. v. Roy supra 510;Novella v. Hartford Accident Indemnity Company, supra 564.
Waiver is the intentional relinquishment of a known right. Jenkins v. Indemnity Insurance Company, 152 Conn. 249,257 (1964). National Transportation Co. v. Toquet, 123 Conn. 468,475 (1937) Brauer v. Freccia, 159 Conn. 289, 295 (1970). "Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." Wadia Enterprises, Inc. v. Hirschfeld,224 Conn. 240, 252 (1992). There are four elements of waiver, (1) the existence of a right or defense, (2) the opportunity to apply and use that right or defense, (3) the knowledge of the ability to use that right or defense, and (4) the actions of that party who possess that right or defense which amount to a relinquishment of that right. Novella v. HartfordAccident and Indemnity Co., supra 562. CT Page 2432
"Estoppel rests on the misleading conduct of one party to the prejudice of the other." Novella v. Hartford Accident andIndemnity Company, supra 563. "There are two essential elements to an estoppel the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do same act to his injury which he otherwise would not have done." Novella v. Hartford Accident andIndemnity, Co., supra 563; Bozzi v. Bozzi, 177 Conn. 232, 242
(1979); Spear-Newman, Inc. v. Modern Floors Corporation,149 Conn. 88, 91 (1961). "It is fundamental that a person who claims an estoppel must show that he exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." State v. American News Company,152 Conn. 101, 114 (1964); Linahan v. Linahan, 131 Conn. 307, 327
(1944).
"Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it. . . . Waiver may be inferred from the circumstances if it is reasonable to do so. . . . Whether conduct constitutes a waiver is a question of fact."Cassella v. Kleffke, 38 Conn. App. 340, 347 (1995); Reynoldsv. Reynolds, 121 Conn. 153, 157 (1936).
One of the first waiver cases in the Housing Session wasAldo v. Yasser, SNBR-11, December 23, 1982, (Driscoll, J.).Aldo found waiver in a commercial context when the landlord by its actions waived the sixty day notice requirement in the lease for the exercise of the renewal option by the tenant, Dr. Yasser. A judgment entered in that summary process action for the defendant tenant on the grounds of waiver. The tenant had exercised its lease extension option 20 days late. Acceptance of checks by the landlord in the amount required by the extended lease after the landlord knew the option to renew had not been timely exercised was held to be a waiver. The checks in the increased amount set by the option were tendered by the tenant and accepted by the landlord without objection. The number of increased checks accepted was not set forth in the memorandum of decision but it was less than 6 since the option date was August 1982 and the trial was in December CT Page 2433 1982.
The Court has reviewed the affidavit of Peter Hewitt, dated July 5, 1995. Paragraph 9 of the affidavit states as follows: "On or about December 6, 1993, I advised Frank L. Baker, that GPI, would not accept or consent to any assignment to or assumption by the new firm unless all of the equity partners of the new firm agreed to be liable for all defaults of the new firm under the lease for the entire term of theLease. GPI's reason for setting this condition was that, without total personal liability, it would be too risky to enter into a lease with an 11 member law firm with no net worth. Frank L. Baker represented that such a condition was not acceptable." GPI is the plaintiff, Greenwich Plaza, Inc.
Paragraph 18 of Mr. Hewitt's July 5, 1995 affidavit says, "GPI never consented, in writing or orally, to any assignment and/or assumption of the Lease." This Court has examined the documentation provided by Mr. Hewitt's two affidavits and Mr. Baker's affidavit. The court fails to see any one document that is a written consent, signed by the plaintiff. As already found there is no genuine issue of material fact in that regard. It is not necessary for the court to review the various documents to determine if a combination of documents amount to plaintiff's written consent. The court now turns to the issue of waiver of the written consent requirements.
Examining the documents in those three affidavits the court finds that there is nothing that says that plaintiff, after December 6, 1993, objected to WBAM's occupancy of the leased premises. Nor do any documents show that the plaintiff declared any default under the lease as against any of the named parties to this lawsuit. The Court concludes that paragraph 18 of Mr. Hewitt's affidavit; "GPI never consented, in writing or orally, to any assignment and/or assumption of the lease" to be a conclusion and not fact. Water and WayProperties v. Colt's Manufacturing Co., supra 665. The Court further concludes that certain events occurred after the December 6, 1993 advice by Mr. Hewitt. Those events have been disclosed in Mr. Baker's affidavit. None of those facts disclosed in Mr. Baker's affidavit after December 6, 1993 have been refuted, objected to or intimated in any way as being inaccurate. The court must conclude there is no genuine issue as to any material fact in that particular regard. Those facts are set forth in the remaining portion of this CT Page 2434 memorandum of decision.
This Court finds without dispute that there was a letter of credit of $182,642.00 issued on behalf of WR as security deposit in accordance with Article 38 of the lease. There was a surrender of that letter of credit prior to the date of its calling or default with the consent of the landlord after December 6, 1993. The landlord did not at any time call the letter of credit despite its knowledge that WBAM was in occupancy.
This court finds that there was correspondence in early 1994 concerning the letter of credit. The correspondence was from the landlord directly to WBAM requesting a new letter of credit, indicating that the new firm would be a party to the new letter of credit. There is no genuine issue of material fact in that regard.
There is a provision in the lease for the names of the tenants or the occupants of the building to be placed on the plaintiff's lobby directory board of the building. The plaintiff changed WR to WBAM on its directory board after December 1993 where it remained to the date of this motion. The plaintiff also changed WR's name to WBAM's name on the elevator tenant directory. The plaintiff made these changes in the directories knowing that Schedule C of the Lease and Greenwich Plaza, Inc. Building Rules in paragraph 4 only permits "tenants" names to be in the directory and the "color and style of such display" is subject to the approval of the landlord. The plaintiff did not dispute these facts.
Rent billings were sent out on a routine basis by the plaintiff to all tenants. After December 1993 the bills were not sent to WR. The said bills for a period of 19 months were addressed to WBAM and were sent to WBAM. Those billings were responded to by checks on the account of WBAM payable to the landlord, Greenwich Plaza, Inc., deposited on a routine regular basis without any change of endorsement, objection or question by the plaintiff. Copies of the front and the back of the checks along with the bills are attached to Mr. Baker's affidavit. There are 19 monthly rent checks from WBAM; November 10, 1993 to May 10, 1995. They are attached to Mr. Baker's June 5, 1995 affidavit. All checks were cashed. They total over $2,150,000. This not controverted by any evidence or facts whatsoever. CT Page 2435
Article 37 of the lease grants a tenant the right to receive certain parking emoluments including landlord's issuance of parking cards to provide access to the parking garage. The parking cards were provided by the plaintiff to WBAM, not to WR, after December of 1993. On May 20, 1994 the plaintiff prepared a new parking rental agreement, a copy of which is attached to Mr. Baker's affidavit as Exhibit J. WBAM is named as the tenant. The plaintiff signed the parking agreement on June 17, 1994. This fact is not in dispute.
Article 21 of the Lease grants the tenant the right to receive cleaning services provided by the Landlord, and/or the landlord's agents. "Landlord shall, at its cost and expense provide building standard cleaning services, as indicated in Schedule E, in tenant's office space." There was no dispute that the cleaning company was actually an agent or a subsidiary of Greenwich Plaza, Inc. For the entire 19 months, November 1993 to May 1995 the plaintiff provided that cleaning service to WBAM. Extra cleaning services were billed to WBAM and paid by WBAM. They were not billed to WR. See Exhibits KL, Baker affidavit. There is no dispute as to these facts.
Article 41 of the lease grants to the tenant the right to lease additional space in the Building. Peter E. Hewitt, Senior Vice President and General Counsel formally by letter dated November 17, 1993 offered WBAM additional space in the building in accordance with Article 41 Exhibit C, Baker affidavit. This additional space was offered by the landlord to WBAM with a substantial dollar discount in accordance with tenants right under the lease. There is no dispute as to these facts.
Article 11 of the lease is the sublet clause. There was landlord's correspondence to WBAM thereafter offering permission for the sublet, acknowledging that there was a sublet right. Exhibit M dated September 8, 1994 Baker affidavit. The landlord on February 27, 1995 sent to WBAM a letter containing a waiver of the requirement that Albert B. Ashforth, Inc, be used as the exclusive rental agent for subleasing the space. The letter was signed by Darrell Harvey, President of Greenwich Plaza, Inc. Exhibit N, Baker affidavit. There is no dispute as to these facts.
The landlord never sent a default notice in accordance CT Page 2436 with Article 17 of the Lease. The landlord never sent a notice to cure the alleged assignment and/or assumption in accordance with Article 17 of the lease. There is no dispute as to this fact.
In the event the plaintiff had wished to accept WBAM as a tenant and furnish WR a written consent to the assignment and/or assumption, only one act was not performed by the plaintiff; the actual signature on consent document. It appears to the court that there was no other act which could have been done either by the plaintiff or WBAM to assign the lease. Everything, that could possibly be done, was done except one; the written consent to assign and/or assume was not obtained from the landlord. Other than that act, for 19 months the plaintiff and WBAM acted as Landlord and Tenant under the July 1, 1990 lease.
Article 42.02 of the lease says: "It is expressly understood and agreed that the partners of the Tenant shall be liable for any and all obligations of Tenant resulting from any defaults of Tenant occurring at any time during the first five Lease Years. It is expressly understood and agreed that no partner of the Tenant shall have any personal liability for any obligation of the Tenant resulting from any default of Tenant occurring on or after the commencement of the sixth Lease Year." This Court has found that the lease commenced on July 1, 1990. The commencement of the sixth Lease Year is July 1, 1995. This lawsuit was commenced in May 1995. This Court believes, although it is not necessary for it's findings, that Article 42.02 is the driving force behind this particular lawsuit.
Article 11.01 of the lease says, "without Landlord's prior written consent." This Court has determined as a matter of law that that clause can be waived. Article 17.01 subsection (1) of the lease says," or if Tenant shall default in the performance of any other covenant to be observed by it hereunder, and if such default shall continue for a period of thirty (30) days after written notice thereof shall have been given by Landlord to Tenant, or if said default complained of shall be of such a nature that it cannot be completely cured or remedied within said thirty (30) day period, and if Tenant shall not have diligently commenced curing such default within such thirty (30) day period, or having so commenced curing such default if Tenant shall not thereafter with reasonable CT Page 2437 diligence and in good faith proceed to remedy or cure such default, or if the Demised Premises become vacant or deserted; then at the option of the Landlord the term hereunder shall end and expire. . ." This is the default clause. There is no evidence of any such written notice provided by the landlord to the tenant. There is no evidence of any extension of that thirty (30) day period of time. There is no hint in any of the correspondence that any such written notice was going to be forthcoming, except for the statement by Mr. Hewitt in paragraph 9 of his affidavit, a conversation with Mr. Baker on December 6, 1993.
There is no acceleration clause in this lease. The Court has not been able to find one, and had invited the Plaintiff to at oral argument point one out. Article 17.03 contains what appears to be an acceleration clause. Words in the middle of Article 17.03 have been crossed out. It used to read, "or, may hold the Tenant in advance for all such damages." The crossed out language has been initialed by the parties. That would have been the acceleration clause. Thus there is no acceleration clause in this lease. Both parties are sophisticated in business transactions, well endowed with the ability to negotiate leases, both as landlord and as tenant. This Court cannot believe that the five year limitation of personal liability for partners under Article 42.02 was inadvertent, nor was the deletion of Article 17.03 inadvertent.
Article 32.01 contains a clause. "The receipt by Landlord of rent with knowledge of the breach of any covenant of this Lease shall not be deemed a waiver of such breach. No provision of this Lease shall be deemed to have been waived by Landlord, unless such waiver be in writing, signed by the Landlord." This non waiver clause can be waived under Connecticut law.
Mr. Hewitt's letter to WBAM dated November 17, 1993 attached as Exhibit C to Mr. Baker's affidavit is instructive in the benefits the plaintiff intended to give to WBAM. "This is to give you formal notice in accordance with Article 41 of the Lease with Whitman and Ransom. This is to give you notice of the availability of three parcels of space in the Building, which are shown on Exhibits A-1 and A-2 to this letter." Mr. Hewitt's letter says that the asking price and fair market rent for the space is $35.00 per square foot, plus $1.50 per CT Page 2438 square foot for electricity. The landlord's offer in the November 17th letter was $32.50 per square foot plus electricity. WBAM was given 30 days to exercise this leasehold right. This Court has examined Exhibits A-1 and A-2 attached to that letter and has calculated the square footage contained in those two particular exhibits. It has noted a $2.50 per square foot difference between the $35.00 asking and market price and the $32.50 offer price. Exhibits A-1 and A-2 contain 21,000 square feet. Therefore, there was a rental savings being offered by the Landlord to WBAM in accordance with Article 41 of over Fifty Thousand ($50,000.00) dollars per year. This is highly indicative of an affirmative act by the Landlord to waive any noncompliance with the assignment, assumption and non waiver clauses of the lease.
Furthermore, in Exhibit L of the Baker affidavit, are a series of documents from Greenwich Plaza, Inc. charging to WBAM further work such as HVAC and other repairs. Exhibit L shows consistent billings from December 29, 1993 through the spring of 1995. The plaintiff billed WBAM after the plaintiff provided those services to WBAM. There is no dispute as to these facts.
Cerruti v. Burdick, 130 Conn. 284, 288, (1943) holds that payment of increased rent for four months is a waiver. "In the absence of special circumstances not present here, this would constitute an acceptance of the termination of the lease as a matter of law." Cerruti v. Burdick, supra 288. This Court has found that after the December 6, 1993 conversation with Mr. Baker the plaintiff accepted all monthly rent checks from WBAM and engaged in the other acts set forth in this opinion. Therefore, the Court finds as a matter of law that the four elements of waiver have been proven by the defendant; that there was the existence of a right to object to the assignment or assumption, the Plaintiff knew about that right there was an opportunity for the Plaintiff to apply and use that right, the Plaintiff through its attorneys and officers had the knowledge and the ability to use that right, and the actions of the Plaintiff from December 9, 1993, possessed with that right and the power to exercise it, waived that right.
The Court also determines that the elements of equitable estoppel have been shown. The acts of the landlord were actions indicating to WBAM and WR, that in all respects, WBAM was the tenant. The landlord had indicated in all CT Page 2439 respects that they intended WBAM to be the Tenant in the premises, and that WBAM and the individual defendants relied on those representations to their detriment.
It is fundamental that a person who claims an estoppel must show that he exercised due diligence to know the truth and he did not only not know the true state of things but also lacked any reasonable available means of acquiring that knowledge. The defendants did all that they could do short of one act; obtaining the signature of the plaintiff on a consent document. WBAM could do any more then they had done to indicate that in fact there was a de facto assignment and/or assumption of this lease, and/or a waiver by the landlord of its written consent. The defendants exercised good faith and due diligence and is not prevented from obtaining relief by estoppel.
For years summary judgments have not been granted by Connecticut trial judges. The rules as to factual issues in summary judgment motions are well known. "Summary judgment procedure is especially ill adapted to negligence cases where as here, the ultimate issue in contention involves a mixed question of fact and law." Spencer v. Good Earth RestaurantCorp., 164 Conn. 194, 198 (1972). "Summary judgment is ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 375 (1969). "If you distilled all the law into one basic proposition, it would be that summary judgment should be sparingly granted. Does that mean never? No, of course not. But it does mean that you should proceed very cautiously and scrupulously examine all the paperwork before you act. If, having done so, you have any doubt, you should deny the motion." Motions for Summary Judgment, Seminar, Connecticut Judge's Institute, 1994.
The court is mindful of these precepts and the general rule that the issue of waiver and/or estoppel is usually a question of fact. Cassella v. Kleffke, supra 347; Reynolds v.Reynolds, supra 157; Galluzzo v. Mannino, 110 Conn. 507, 513
(1930). The court has before it evidence of 19 months of activities the parties. At some point in time the issue of waiver and/or estoppel is no longer a matter of fact but a matter of law. Phinney v. Casale, 40 Conn. App. 495, 499
(1996). This court need not determine when that point in time CT Page 2440 occurred. It occurred within that 19 month period. That point when it became an issue of law has long since passed.
This Court therefore finds that there is no genuine issue as to any material fact regarding the issues of waiver and/or equitable estoppel. On the First Count of the complaint, Summary Judgment shall enter in favor of the moving defendants.
The Second Count claims anticipatory breach. Extensive briefs were filed concerning of the status of Connecticut common law as to commercial lease's.
"At common law the covenants of a lease are deemed to be independent so that a breach of the landlord's promise to perform services would not suspend the obligation of the tenant to pay the rent as agreed." S.H.V.C., Inc. v. Roy,37 Conn. Sup. 579, 585 (1980). There have been a number of modifications of that rule. The most extensive change became effective October 1, 1976 by the creation of Title § 47a of the Connecticut General Statutes. Connecticut General Statutes§ 47a-1 through Connecticut General Statutes § 47a-20 apply only to residential leases. Hoban v. Masters, 36 Conn. Sup. 611,613 (1980). The common law that covenants of a lease are deemed to be independent was changed concerning residential tenancies. There now is an obligation by a residential landlord to provide services. The failure to provide services so that the premises are rendered unfit and uninhabitable, prevents the landlord from collecting rent. The harshness of the common law independent covenant rule has been recognized. "Statutory enactments in recent years have modified its harshness with respect with to residential property. GeneralStatutes § 47a-1 through § 47a-20. An exception to the rule is that a breach of the landlord's implied covenant of quiet enjoyment by an eviction, actual or constructive, does provide a defense to an action for nonpayment of rent." S.H.V.C.,Inc. v. Roy, supra 585. The legislature changed the common law as to independent covenants relating to residential but not commercial leases.
The second change was made by the Appellate Court in 1989 in Rokalor, Inc. v. Connecticut Eating Enterprises,Inc., 18 Conn. App. 384, 388, (1989) in which general contract damage rules were applied to breaches of leases. This is now the law in Connecticut for damages in all leases including CT Page 2441 commercial leases.
The third change, the earliest in time, is contained in the holding of Sagamore Corporation v. Willcutt, 120 Conn. 315,320 (1935) which permitted future rent to be considered damages under limited circumstances. Other than these three changes the common law still remains in regard to commercial leases; that the covenants of a lease are deemed to be independent so that a breach of the landlord's promise to perform services would not suspend the obligations of the tenant to pay rent as agreed. The terms and covenants of a commercial lease are independent, not dependent. SagamoreCorporation v. Willcutt, supra 319.
Connecticut, has recognized for years, a cause of action for anticipatory repudiation and anticipatory breach. This is the legal theory upon which the Second Count is based. The most cited case is Martin v. Kavanewsky, 157 Conn. 514 (1969).Martin involved a contract of sale for real property and construction thereon not a commercial lease. Under general contract law Connecticut does allow suits for anticipatory repudiation. "A positive statement to the promisee that the promisor will not perform his contract constitutes an anticipatory breach which is a total breach of contract."Martin v. Kavanewsky, supra 518-519. The Plaintiff has invited this court to apply contract principles of anticipatory breach to a commercial lease despite the fact that no prior Connecticut appellate decision has so held. In fact, the cases hold to the contrary.
The plaintiff points to what it calls pre World War II cases and asks this court to abandon those holdings. In reEdgewood Park Junior College, Inc., 123 Conn. 74 (1937) is an example of what the Plaintiff calls a pre World War II case.
 "The doctrine of anticipatory breach is not extended to unilateral contracts unless the promisor's duty is conditional on some future performance by the promisee. It is immaterial whether the contract was originally thus unconditionally unilateral or has become so by the performance of one party. In neither case can a breach arise before the time fixed in the contract for some performance. There must be some dependency of performances in order to make anticipatory breach possible. . . . A lease is CT Page 2442 primarily a conveyance of an interest in land. Its covenant are independent covenants. Thus, apart from statute or express provisions of the lease, the tenant's nonpayment of the rent or other breach of covenant will not justify his eviction by the landlord. The independent covenants are in effect separate unilateral obligations. Also, since the execution of the lease by the lessor may be said to constitute performance on his part, the lease for that reason may be considered a unilateral agreement. A lease, therefore, considered as a contract, is a unilateral agreement with no dependency of performance. No breach of contract can therefore arise before the time fixed in the contract for some performance. A repudiation of the lease by the tenant or its receiver would not give the landlord an immediate cause of action for future rent." (Internal quotations omitted) In re Edgewood Park Junior College, Inc. supra 77-78.
This is the law in Connecticut.
The Plaintiff cites a number of cases which it argues shows a trend in which leases are determined to contain dependent clauses. The plaintiff claims that Connecticut law of anticipatory breach should apply and the Second Count has thus alleged a viable cause of action. The first case is the only Connecticut case cited by the plaintiff. Dornfeld v.Hom, 4 Conn. L. Rptr. 44 (1991), 1991 Ct. Sup. 3234, H-949, April 2, 1991 (Berger, J.). Dornfeld was a summary process case in the Housing Session involving a commercial lease concerning a restaurant. The lease contained an assignment clause which required the landlord's written consent. At the tenant's request the following clause was added to the lease; "the landlord shall not withhold the consent unreasonably."
The defendant, 77 years of age, had operated the business at that location for 15 years. He was concerned about his ability to operate the business as he grew older and had the unreasonable withholding of consent clause added in order to be able to sell the business protecting the right of continued occupancy for the prospective purchase. The five year lease which expired in December 1991 had a five year option at a $1310 monthly rent. In November 1990 the defendant had a buyer who was willing to purchase the business for $35,000. CT Page 2443 The plaintiff, landlord, told the prospective purchaser that the rent would be raised from $1,080 per month to $1,800 per month. The buyer chose not to purchase the business. The tenant did not pay the December 1990 rent of $1,080.
Judge Berger moved by the unfairness shown by the landlord to the tenant rendered the following decision. "In addition to the need for consistency, equity and fairness dictate such a result. Accordingly, judgment shall enter for the defendant." Dornfeld v. Hom, supra 3240.
Judge Berger, in a careful decision, explored the status of the law regarding commercial leases. He acknowledged that the current status of Connecticut is as stated in In reEdgewood Park Junior College, Inc., 123 Conn. 74, 77 (1937) quoted on page 38 and 39 of this decision. He noted that the law regarding enforcement of real estate leases changed in 1970 citing the case of Javins v. First National Realty Corp., a United States Court of Appeals case from Pennsylvania. "That decision reversed traditional common law theories of enforcement of real estate leases. The pendulum has been moving, albeit slowly, from the law of property to contract law ever since." Dornfeld v. Hom, supra 3236. Judge Berger noted two changes in Connecticut as to common law leases both already noted in this opinion. The first was the "statutory modifications to the independent covenant rule for residential situations, General Statutes § 47a-1 through 20, the common law still prevailed in commercial settings." Dornfeld v. Hom, supra 3236. The second was Rokalor, Inc. v. ConnecticutEating Enterprises, Inc., 18 Conn. App. 384, 391 (1989) which applies the rules of contract damages to breach of lease cases. "In 1989, the pendulum clearly and forcefully crossed over the center line with the recognition in Rokalor."Dornfeld v. Hom, supra 3237.
At the same time Judge Berger also noted a confirmation for the first time by the Connecticut Supreme Court, that trial courts can use their equitable power to prevent a forfeiture in a summary process case. Fellows v. Martin,217 Conn. 57 (1991). The Fellows decision was released in the first week of January 1991 in time for Judge Berger to incorporate it in Dornfeld v. Hom on April 2, 1991.
Citing Javins v. First National Realty Corp., andRingwood Associates, LTD v. Jack's of Route 23, Inc., CT Page 2444398 A.2d 1315 (N.J. 1979), Judge Berger declared that contract law not property law should determine the outcome the eviction of Mr. Hom's business. The court then found that the landlord breached the lease by unreasonably withholding consent to the lease assignment and demanding an $1800 month rent from the prospective buyer citing Ringwood. "However, under generally accepted principles of contract law, if there is a substantial breach of a material mutually dependent covenant in a bilateral contract, the injured party is excused from further performance." Dornfeld v. Hom, supra 3239.
Dornfeld v. Hom being a trial court decision is not binding on this court. This court agrees with Judge Berger's historical analysis of Connecticut lease common law. This court is bound to follow the Supreme Court even if its statement of the status of the law is dated in 1937. Furthermore Dornfeld v. Hom could have been decided in favor of the defendant tenant on the basis of equitable relief from forfeiture under Fellows v. Martin. The plaintiff claims that Judge Berger decided the case by making new law in Connecticut. As to applying equitable principles he said: "As a result of the above findings, this court need not use these powers." Yet at the very end of the decision he states: "equity and fairness dictate such a result." Dornfeld could have been decided in favor of the tenant using the equitable principles of Fellows v. Martin. Judge Berger acknowledged that fact. This court therefore concludes that Dornfeld v.Hom, is an equitable forfeiture case and declines to follow its lead in declaring years of leasehold common law void.
This court has conducted further research. It has found no appellate cases in Connecticut citing Javins v. FirstNational Realty Corporation, nor discussing the law of dependent covenants. The court has found two other trial court decisions. Grand Avenue Associates v. Gallant andGallant, 1993 Ct. Sup. 9082, NH-607, October 14, 1993 (Riddle J.) is a commercial lease damage law suit. The commercial lease contained a "quiet enjoyment" clause that granted the tenant the right to terminate the lease upon 60 days notice. Evidence was offered that the landlord failed to provide an adequate security system which was needed in that area of New Haven. On April 29, 1991 the tenant mailed a notice of termination of the lease effective June 30, 1991. Although the lease ran to August 31, 1991 no rent was paid for June, July and August of 1991. The landlord was holding one month CT Page 2445 security deposit. The court held that the landlord breached the lease by failure to provide a security system. "Since the plaintiff has not fulfilled his obligations, the defendant is relieved of his obligations under the lease." Grand AvenueAssociates v. Gallant and Gallant, supra 9093.
Judge Riddle in Grand Avenue cited Dorfeld v. Hom andRingwood Associates v. Jacks of Route 23 with no discussion ofJavins or the major change in common law implicated by this decision. Grand Avenue involved an unusual lease provision granting the tenant the option to terminate the lease. The tenant so terminated based on reasons found by the trial court to be credible and proper. Although the mathematics may not have been exact, the same result, with a judgment for the defendant tenant can be reached by finding that the security deposit offset the unpaid June 1991 rent and the tenant properly and validity terminated the lease effective June 30, 1991 so no rent would be due for July 1991 and August 1991.
The reasoning of Grand Avenue does not persuade this court to abandon common law. Javins is not even cited. The results in Grande Avenue could be obtained by applying lease termination rules without the necessity of embracing Javins
and Ringwood. Nothing in Grand Avenue persuades this court to overrule our Supreme Court.
The second case is Caccavella v. Marriott Corporation1992 Ct. Sup. 6793, July 20, 1992 (Rush, J.). This is not a Housing Session case. It is a negligence case in which the court directed a verdict for the defendant. The plaintiff was a tenant in a hotel room owned by the defendant. The plaintiff was injured when a picture fell on him while he was lying in bed. The plaintiff's suit was for a breach of an implied warranty of habitability not negligence. ConnecticutGeneral Statutes § 47a-1 through 20 was not applicable. Judge Rush was invited to join the reasoning of Javins v. FirstNational Realty Corporation and he refused. "The court can find no reasonable basis to conclude that a warranty of habitability exists in the state of Connecticut so as to permit the plaintiff to recover damages for personal injuries under the circumstances set forth in this case." Caccavellav. Marriott Corporation, supra 6794. This court agrees with the results in Caccavella regarding the applicability ofJavins v. First National Realty Corporation in Connecticut. CT Page 2446
The plaintiff cites Javins v. First National RealtyCorporation, 428 F.2d 1071, (1970) also cited in Dornfeld v.Hom "Twenty years ago in the landmark case of Javins the United States Court of Appeals in finding an implied warranty of habitability in every residential lease held that under contract principles the tenant's obligation to pay rent was dependent upon the landlord's obligation to maintain the premises in a habitable condition." Dornfeld v. Hom, supra 3236. Javins was a residential tenancy case based on the law of the Commonwealth of Pennsylvania. There is no reference in Javins that Pennsylvania law differentiates between residential and commercial tenancies. In 1970 the State of Connecticut did not have Connecticut General Statutes § 47a-1
to Connecticut General Statutes § 47a-20. Since Javins was decided in 1970 the State of Connecticut has in effect joinedJavins and by legislative fiat has imposed the dependent covenant obligation on residential landlords including implied warranties.
Javins is not instructive for two reasons; One, there is no reference in Javins as to whether statutory or common law in Pennsylvania differentiates between residential and commercial tenancies. Two, Javins is a residential case and is not binding on commercial leases.
The third case that the Court is going to comment on isSunCal Inc. v. United States, 25 CL Ct. 426 (1992). It is a United States Claims Court case dated May 6, 1992. SunCal,Inc. was a commercial tenancy case involving the sixth, seventh and eighth floor of an office building in Los Angeles in which the United States General Service Administration, the GSA, terminated their lease and never took possession of the commercial property. A lawsuit was filed by the plaintiff, landlord, against the United States in the United States Claim's Court.
Judge Andewelt's decision contained an analysis of commercial leases, common law leases, dependent and independent covenants of leases, breach of contract, in both residential and commercial settings. The Plaintiff, SunCal,Inc., claimed that damages should be calculated on the same general standards as would apply to any breach of contract. The United States claimed that common law real property principals should govern. The decision noted there was a split of authority on this legal issue. It was noted even CT Page 2447 though this was a government case and Federal law applied, California civil code contained provisions applying general breach of contract measurement of damages to commercial leases.
According to the defendant's position in this instant case leases have their roots in early common law. Common law recognized a distinction between leases of real property and other non property forms of contract. Connecticut recognizes that dichotomy. Under common law in Connecticut a landlord may not rely on the contract doctrine of anticipatory repudiation to cover payments of rent that would have accrued but for the abandonment or the anticipatory breach of the contract. In re Edgewood Park Junior College, supra 77.Corbin on Contracts defines the doctrine of anticipatory breach as "a definite and non conditional repudiation of the contract by a party communicated to the other."
The Court in Suncal found Professor Corbin to instructive, and indicated that based upon the facts ofSuncal, Inc. contract law would be applied. The court determined that a covenant to pay rent was a dependent covenant. Judge Andewelt concluded "As a result, instead of relying exclusively on common law property principles, modern courts have tended more and more to rely upon contract principles when evaluating lease disputes." SunCal, Inc. v.United States, supra 7; Javins v. First National RealtyCorporation was cited for this proposition along with a Nebraska and an Oregon case. Suncal, Inc. thus joined the modern trend and indicated that "under such an approach, absent more, the transfer, relet, sale or modification of the leased property after a definite and unequivocal repudiation of the contract by the lessee would not end the lessor's rights to sue for total damages resulting from the breach."Suncal, Inc. v. United States supra 12. In effect SunCal,Inc. permitted an anticipatory breach of contract action.
This Court has a difficult time understanding how the Plaintiff can apply SunCal, Inc. to the facts of this case.Sun Cal, Inc. involved a commercial tenancy. There was an abandonment of the building. As a matter of fact it was the ultimate abandonment; the defendant never took occupancy. Assuming that they had violated other terms of the lease such as nonpayment, there was clearly a definite and unequivocal repudiation. The instant case does not involve a vacating of CT Page 2448 the premises, non payment of rent or any other definite or unequivocal repudiation of the lease. SunCal, Inc. does not control the decision in this instant case. This Court does not accept the invitation of the Plaintiff to abandon common law in the State of Connecticut using SunCal, Inc.
Common law in the State of Connecticut, as far as waterfront property in Greenwich, started on July 18, 1640. Captain Daniel Patrick, Robert Feakes and Elizabeth Feakes either leased or purchased Elizabeth Neck's, now Greenwich Point, and a major portion of Old Greenwich. When they acquired that property from the Sinawoy Indians they relied upon English common law. On July 1, 1990 Whitman and Ransom and its Connecticut equity partners relied on the same common law when the lease was signed. This court is not going to change 350 years of common law. The Court therefore rejects the plaintiff's invitation and finds that the common law of the State of Connecticut is applicable. Commercial leases have independent covenants and there is no common law action for anticipatory breach of a commercial lease. In re EdgewoodPark Junior College, supra 77-78.
The court turns to the last issue, whether or not the allegations of the complaint as a matter of law comply the exception created by Sagamore Corporation v. Willcutt,120 Conn. 315, 319 (1935). Sagamore is the law of Connecticut. It reconfirmed the common law and carved out an exception based upon the fact that the lessee abandoned the leased premises and refused to pay any further rent. "A lease is primarily a conveyance of an interest in land and its execution by the lessor may be said to constitute performance on his part, making the instrument, when considered as a contract, a unilateral agreement with no dependency of performance which would make an anticipatory breach possible." SagamoreCorporation v. Willcut, supra 319. With no acceleration clause in the lease, the Plaintiff is left to the elements ofSagamore Corporation v. Willcutt.
The elements of Sagamore Corporation v. Willcutt are (1) non payment of rent and refusal to pay future rent, and (2) abandonment of the premises. The record in this case show no non-payment. The court has found a waiver of the non consent clause. WBAM is still in possession and occupying the premises. Sagamore Corporation v. Willcutt will not sustain the Plaintiff's lawsuit. Sagamore Corporation v. Willcutt is CT Page 2449 alive and well. It was cited in Rokalor, Inc. v. ConnecticutEating Enterprises in 1989. The Appellate Court in 1994 citedSagamore Corporation v. Willcutt in K R Realty Associates v.Gagnon, 33 Conn. App. 815. On July 11, 1995 Fruin v.Colonnade One at Old Greenwich Limited Partnership, 38 Conn. App. 420,432, cited Sagamore Corporation v. Willcutt,120 Conn. 315 (1935).
This Court rejects the Plaintiff's argument that pre World War II cases are no longer viable and should not be binding on the State of Connecticut and the Judges of the Superior Court. A trial court is bound by the language of the statutes and the prior decisions of the Supreme Court.
Common law should not be easily abrogated by a trial judge. Squeglia v. Squeglia, 234 Conn. 259, 264, fn4 (1995). "We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated." Lynn v. HaybusterManufacturing, Inc., 226 Conn. 282, 290, (1993). Lynn repeated the general rules limiting a trial court's interpretation of a legislative enactment. "In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope (internal citations omitted). . . . The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stabilty [stability] in the legal system as the doctrine of stare decisis in relation to case law." Lynn v. HaybusterManufacturing, Inc. supra 290; Munroe v. Great AmericanInsurance Company, 234 Conn. 182, 187 (1995).
 "Stare decisis gives stability and continuity to our case law. This court, however, has recognized many times that there are exceptions to the rule of stare decisis. Principles of law which serve one generation well may, by reason of changing conditions, disserve a later one. . . . Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better. . . . The adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics. A court, when CT Page 2450 once convinced that it is in error, is not compelled to follow precedent. . . . If, however, stare decisis is to continue to serve the cause of stability and certainty in the law a condition indispensable to any well ordered system of jurisprudence a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . This is especially true when the precedent involved concerns the interpretation or construction of a statute." (Citations omitted.) Herald Publishing Co. v. Bill, 142 Conn. 53, 62, 111 A.2d 4
(1955): see Kluttz v. Howard, 228 Conn. 401, 406, 636 A.2d 816 (1994): White v. Burns, 213 Conn. 307, 335-36, 567 A.2d 1195 (1990)" General Electric Employees Federal Credit Union v. Zakrzewski, 235 Conn. 741, 744 (1996).
"Whether a Supreme Court holding should be reevaluated and discarded is not for this court to decide." State v.Reis, 33 Conn. App. 521, 527, 636 A.2d 872, cert. denied,229 Conn. 901, 640 A.2d (1994). This rule applies to trial courts.State v. Porter 39 Conn. App. 800, 803 (1995). This court will not change the Connecticut common law holding that clauses in commercial leases are independent covenants.
Therefore, on the basis of the findings that have been made on the common law of the State of Connecticut, and the fact there is no genuine issue of material fact concerning the issues raised by Sagamore Corporation v. Willcutt, the court enters a Summary Judgment in favor of the moving Defendants on the Second Count.
This court need not consider the other issues raised by the parties.
BY THE COURT
KEVIN TIERNEY, J.